**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JOSEPH G. PRICE,<br>Appellant, | DOCKET NUMBER<br>SF-0752-23-0195-I-1 |
| v. | |
| DEPARTMENT OF VETERANS<br>AFFAIRS,<br>Agency. | DATE: October 18, 2024 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Joseph G. Price, Tacoma, Washington, pro se.

Jennifer A. Brewer and Burke Josslin, Seattle, Washington, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**REMAND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which affirmed his removal for unacceptable conduct. For the reasons discussed below, we GRANT the appellant's petition for review. We AFFIRM the initial decision to the extent that the administrative judge determined that the agency proved the charge of unacceptable conduct as MODIFIED to correct the misstatement that

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the appellant "waived" his request for a hearing. We VACATE the initial decision to the extent that the administrative judge found that the appellant did not raise any affirmative defenses, determined that the agency proved nexus, and sustained the penalty of removal and REMAND the case to the regional office for further adjudication of the appellant's whistleblower reprisal claim in accordance with this Remand Order.

## BACKGROUND

¶2     The appellant was employed by the agency as a GS-5 Nursing Assistant, assigned to the agency's American Lake Community Living Center (CLC) in Takoma, Washington. Initial Appeal File (IAF), Tab 1 at 1, Tab 6 at 9, 11. In this position, he was responsible for providing direct patient care to veterans at the CLC. IAF, Tab 6 at 275.

¶3     According to the agency, on September 16, 2021, the appellant "subjected a [v]eteran patient who has a mental/physical impairment and inability to adequately provide care for himself to humiliation by lifting his gown in the common area in the [presence] of other employees . . . and stated 'you['re] full of piss' . . . instead of following standard protocol." *Id.* at 260. After receiving email complaints from other employees about the incident, the Nurse Manager of CLC's Patient Care Services conducted a fact-finding investigation and recommended that the appellant be removed from the CLC. IAF, Tab 6 at 189-191. Subsequently, an Administrative Investigation Board (AIB) conducted an investigation and concluded that the appellant had subjected the patient to humiliating treatment. IAF, Tab 6 at 11-14, 187-88. Based on the September 16, 2021 incident, the agency removed the appellant effective January 10, 2023, for unacceptable conduct. IAF, Tab 6 at 271-74, Tab 6 at 8.

¶4     The appellant filed an appeal of his removal with the Board. IAF, Tab 1 at 2. He appeared to initially raise a claim that he was terminated for reporting a patient safety concern to the agency. IAF, Tab 1 at 6, Tab 9 at 3. On March 28,

2023, the administrative judge issued an order in which she acknowledged this potential whistleblower reprisal claim and advised the parties of their respective burdens regarding such a claim. IAF, Tab 9 at 3-6. She instructed the parties to respond regarding any whistleblower reprisal claim by May 2, 2023. *Id.* at 6. On April 18, 2023, the appellant submitted a pleading titled "Statement," in which he asserted that, in conjunction with the incident in question, he reported to the agency that the patient was being neglected and a lack of concern by those present. IAF, Tab 15 at 5-6. Notwithstanding this submission, the administrative judge later concluded that the appellant was not asserting an affirmative defense. IAF, Tab 27 at 2-3.

¶5      The administrative judge scheduled the appellant's requested hearing. IAF, Tab 1 at 2, Tab 27 at 4. She later canceled the hearing as a sanction after the appellant neither appeared nor showed good cause for his absence. IAF, Tabs 35, 37-38. The administrative judge issued an initial decision affirming the appellant's removal on the written record. IAF, Tab 43, Initial Decision (ID) at 1-2, 11. She determined that the agency proved its charge, nexus, and the reasonableness of the penalty of removal. ID at 6-10.

¶6      The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We modify the initial decision to clarify the administrative judge's misstatement that the appellant waived his request for a hearing.</u>

¶7      The initial decision indicated that the appellant had waived his right to a hearing. ID at 1. The record reflects that the administrative judge canceled the hearing after the appellant failed to attend the hearing without good cause. IAF, Tab 34 at 1, Tab 38 at 1-2. It is well established that an appellant may forfeit the opportunity to a hearing by failing to attend without good cause. *Callahan v.*

*Department of the Navy*, 748 F.2d 1556, 1557-59 (Fed. Cir. 1984); *Social Security Administration v. Dantoni*, 77 M.S.P.R. 516, 520, *aff'd per curiam*, 173 F.3d 435 (Fed. Cir. 1998) (Table). In accordance with the Merit Systems Protection Board Judges Handbook (Judges Handbook), the regional office contacted the appellant, provided the video connection information, and then waited a reasonable amount of time for the appellant to join the hearing. IAF, Tab 34; *see* Judges Handbook, ch. 4(13)(a). After the appellant did not attend the hearing, the administrative judge issued a show cause order providing the appellant with an opportunity to demonstrate good cause for his absence, to which the appellant responded and cited computer issues. IAF, Tab 34 at 1, Tab 37 at 3; *see* Judges Handbook, ch. 4(13)(a). He did not explain why he did not call the regional office to report his difficulties. IAF, Tab 37. The administrative judge issued a second order finding that the appellant failed to show good cause, that he had forfeited his right to a hearing, and that the appeal would be adjudicated on the written record only. IAF, Tab 38 at 1-2.

¶8 We discern no error in the administrative judge's finding that the appellant failed to establish good cause for his failure to attend the hearing, and the parties have not challenged the cancelation of the hearing on review. Nonetheless, for purposes of clarity, we modify the initial decision to reflect that the appellant forfeited, rather than waived, his hearing right.

## The administrative judge properly found that the agency met its burden to prove its unacceptable conduct charge.

¶9 On review, the appellant disagrees with the administrative judge's decision not to credit the appellant's statements denying the alleged misconduct. PFR File, Tab 1 at 4; ID at 6-8. We affirm the administrative judge's findings. A charge of unacceptable conduct has no specific elements of proof; the agency establishes the charge by proving that the appellant committed the acts alleged and that the conduct was improper, unsuitable, or detracted from the appellant's character or reputation. *Canada v. Department of Homeland Security*,

113 M.S.P.R. 509, ¶ 9 (2010); *Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992).

¶10      In support of its charge, the agency alleged that, on September 16, 2021, the appellant humiliated a patient with dementia by lifting his gown in a common area in the presence of others and told the patient he was "full of piss" or words to that effect.  IAF, Tab 4 at 2.  The administrative judge concluded that the agency proved the specified conduct and that the appellant's actions were unacceptable.  ID at 6-8.  We discern no basis to disturb the administrative judge's findings.

¶11      The appellant's petition disagrees with the administrative judge's findings that he engaged in the alleged misconduct by stating that his version of events should have been credited because, as a veteran, he does not lie.  PFR File, Tab 1 at 4.  We find this assertion unavailing.  When, as here, an administrative judge's findings are based on the written record and not based on the observation of witnesses' demeanor, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1298-1302 (Fed. Cir. 2002).  However, the appellant provides no significant reason in his petition for review for the Board to do so.  PFR File, Tab 1 at 4.  Ultimately, the initial decision reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility.  ID at 6-8; *see, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987).

¶12      The administrative judge credited the eyewitness accounts of two nurses that the patient was sleeping on the evening in question when the appellant touched the patient, startling him, over the appellant's statement that the veteran was wide awake and asked for the appellant's help, and that the appellant did not have physical contact with the patient.  ID at 6-7.  The administrative judge acknowledged the appellant's claim that the nurses fabricated their accounts but

was not persuaded. ID at 7-8; IAF, Tab 1 at 6, Tab 41. In crediting the agency's eyewitness accounts, the administrative judge considered and applied the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981); ID at 2, 7-8. In *Borninkhof*, 5 M.S.P.R. at 83-84, the Board identified factors affecting the weight to be accorded to hearsay evidence. Most relevant to the administrative judge's assessment, these factors include the consistency of witnesses' accounts with each other and their own prior statements and whether the witnesses were disinterested. *Id.* at 87. Here, the record contains emails, statements from the fact-finding investigation, and transcripts of interviews from the AIB investigation, which all support the nurses' account of the incident. ID at 6-8; IAF, Tab 6 at 98-101, 123, 126-28, 162, 165-68, 198-209, 216-18. The administrative judge observed that, while their accounts were similar, they were not identical, and they were "consistent with each other in most material aspects" and consistent with the statements of two nursing assistants who witnessed portions of the incident. ID at 7. The two nurses described the patient as sleeping in a wheelchair across from the nurses' station and stated that the appellant touched or startled the patient awake, lifted up his gown, and remarked on how wet he was due to incontinence. ID at 7-8; IAF, Tab 6 at 100, 199, 126-28, 203, 228. In contrast, the appellant alleged that "[t]he patient was awake, partially dressed, no pants, in a wheelchair, a large puddle of urine under the patient extending beyond the wheelchair, the patient [was] in an agitated state yelling for help." IAF, Tab 6 at 48, 55-59, 77, 194-97, Tab 15 at 4. The appellant has consistently denied his own misconduct, but his denials are not corroborated by other witnesses. Thus, the administrative judge properly found that the nurses' accounts were more credible than the appellant's. ID at 7-8.

We remand the appellant's whistleblower reprisal claim for adjudication.

¶13    On review, the appellant argues that the agency removed him in reprisal for his disclosures that agency staff violated patient confidentiality and the standard of patient care. PFR File, Tab 1 at 4. The appellant raised this affirmative

defense below. IAF, Tab 1 at 6, Tab 15. However, the administrative judge stated in her initial decision that the appellant "raised no affirmative defenses." ID at 2.

¶14 When an administrative judge has not addressed an affirmative defense, the Board has set forth a nonexhaustive list of factors to be considered in determining whether the appellant demonstrated his intent to continue pursuing his affirmative defense such that remand is necessary. *See Thurman v. U.S. Postal* Service, 2022 MSPB 21, ¶¶ 17-18, 28. These factors include: (1) the thoroughness and clarity with which the appellant raised an affirmative defense; (2) the degree to which the appellant continued to pursue the affirmative defense in the proceedings below after initially raising it; (3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when specifically afforded an opportunity to object and the consequences of the failure were made clear; (4) whether the appellant raised the affirmative defense or the administrative judge's processing of the affirmative defense claim in the petition for review; (5) whether the appellant was represented during the course of the appeal before the administrative judge and on petition for review, and if not, the level of knowledge of Board proceedings possessed by the appellant; and (6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board. *Id.*, ¶ 18. Applying these factors, we find that remand is necessary for adjudication of the appellant's affirmative defense.

¶15 Applying the first factor, we conclude that the appellant clearly raised his whistleblower reprisal claim. He stated in his initial appeal that the alleged "incident" on September 16, 2021, which led to his removal, was "fabricat[ed]" in retaliation for his reports of patient neglect. IAF, Tab 1 at 6; *see Melnick v. Department of Housing and Urban Development*, 42 M.S.P.R. 93, 97 (1989) (finding that pro se appellants are not required to plead the issues with the

precision required of an attorney in a judicial proceeding), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). The administrative judge held a telephonic status conference, which both parties attended. IAF, Tab 9 at 1. In the March 28, 2023 summary of this conference, the administrative judge indicated that the appellant "explained that he reported an issue of patient safety to his chain of command and was terminated in retaliation for reporting the issue." *Id.* at 3. She ordered him to provide specific information regarding his whistleblower reprisal claim. *Id.* at 6.

¶16    Further, despite stating in the initial decision that the appellant did not raise a whistleblower reprisal affirmative defense, the administrative judge recognized in the initial decision that the appellant alleged that he reported to management that a nurse fabricated the appellant's misconduct "in retaliation for the appellant reporting her for neglecting a . . . patient." ID at 4. The administrative judge cited to an email in the record in which the appellant alleged that he reported a patient in a state of neglect to a supervisor on September 16, 2021, apparently referring to the same patient incident that led to his removal. *Id.* (citing IAF, Tab 6 at 223). In sustaining the charge, the administrative judge concluded that "even if the evening shift should have been more attentive to the patient's incontinence, as the appellant argues, this simply deflects from his own degrading interaction with the patient." ID at 8. Therefore, we conclude that the appellant clearly raised his whistleblower reprisal affirmative defense.

¶17    Applying the second factor, the degree to which the appellant continued to pursue his affirmative defense in the proceedings below after initially raising it, we note that after raising his claim in his initial appeal, the appellant again raised it at the March 28, 2023 telephonic status conference. IAF, Tab 1 at 6, Tab 9 at 6. He also filed a timely response to the administrative judge's order of the same date, providing some of the information that she requested in connection with this defense. IAF, Tab 1 at 6, Tab 9 at 6, Tab 15. Specifically, he responded that he encountered "a patient in a neglected state and requiring immediate care" and that

he reported the condition in which he found the patient to a supervisor and two nurses that same evening. IAF, Tab 15 at 5-6.

¶18    The third *Thurman* factor, whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when specifically afforded an opportunity to object and the consequences of the failure were made clear, is less favorable to the appellant. On May 5, 2023, the administrative judge held a prehearing conference. IAF, Tab 27 at 1. She subsequently issued an order summarizing the issues to be adjudicated. *Id.* at 5. In the order, the administrative judge stated that she inquired with the appellant as to whether he was asserting any claims, other than his disagreement with the charged misconduct, and he did not identify any. *Id.* at 2. She provided the parties with an opportunity to object and warned that if they failed to do so, any objection "will be deemed waived." *Id.* at 7. Neither party objected.

¶19    Applying the fourth factor, whether the appellant raised his affirmative defense in his petition for review, we find that he did so. PFR File, Tab 1 at 4. Regarding the fifth factor, we observe that the appellant has been pro se throughout the Board proceedings, and there is no reason to believe he is particularly knowledgeable about Board procedures.

¶20    Concerning the sixth factor, the administrative judge and the agency did not provide misleading or incorrect information. However, the administrative judge's determination that the appellant abandoned his whistleblower reprisal claim was exacerbated by his pro se status and the administrative judge's failure to recognize his response to her instructions regarding his affirmative defenses and to acknowledge that he had previously provided information responsive to the agency's discovery. *See Thurman*, 2022 MSPB 21, ¶¶ 25-26 (recognizing that the Board has granted leniency to appellants in circumstances in which they obviously were confused or mistaken about the Board's instructions, which may be especially true if the appellant is proceeding pro se). In particular, the record reflects that the agency and the administrative judge attempted to solicit

information about the date, substance, and recipients of the appellant's disclosures that the appellant had provided on April 18, 2023. *Compare* IAF, Tab 9 at 6, Tab 17 at 17, Tab 23 at 2, Tab 24 at 3, Tab 26 at 4-5, *with* IAF, Tab 15 at 5-6. Further, the administrative judge granted the agency's motion to compel discovery in part. IAF, Tab 23 at 1. As relevant here, she ordered the appellant to respond to the agency's interrogatory no. 11. *Id.* at 2-3. In response, the appellant declined to "make changes or modifications" to his prior answer that he had "no statement," expressing his belief that he had "already responded." IAF, Tab 17 at 17, Tab 24 at 3, Tab 26 at 5. The record includes responsive statements and emails by the appellant identifying his reports of alleged neglect of the patient on September 16, 2023, and thereafter; to whom he made his claims of neglect; when he made them; and why he believed his reports led to his removal. IAF, Tab 1 at 6 at 51-55, 65-66, 69, 80, 220, 222-25, 228, 231, 233, Tab 15 at 5-6.[2] Considering all of the factors above, we conclude that this pro se appellant did not waive or abandon his whistleblower reprisal claim. He clearly raised and pursued his defense both below and on review, responded to the administrative judge's order seeking details concerning his claim, and appears to have been confused regarding how to preserve his claim. Accordingly, on remand the administrative judge shall adjudicate this affirmative defense.

¶21    The administrative judge should remind the parties of their burdens and elements of proof in connection with a whistleblower reprisal claim and provide them with an opportunity to submit relevant argument and evidence. IAF, Tab 9 at 3-6; *see Guzman v. Department of Veterans Affairs*, 114 M.S.P.R. 566, ¶¶ 19, 21 (2010). When whistleblower retaliation claims are made in the context of an

---

[2] The agency moved for sanctions for the appellant's failure to provide information regarding his affirmative defense. IAF, Tab 26 at 4-5. However, the administrative judge found that sanctions were not appropriate because the appellant was not asserting an affirmative defense. IAF, Tab 27 at 2-3. In light of our determination that the appellant has preserved his whistleblower reprisal claim, the administrative judge should set a date for the agency to renew its motion for sanctions regarding interrogatory no. 11, if it so desires. The agency must identify in any such renewed motion specifically what information the appellant has thus far failed to provide.

otherwise appealable action, as here, the appellant must prove by preponderant evidence that he made a protected disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the personnel action at issue. 5 U.S.C. § 1221(e)(1); *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 49. If the appellant makes this showing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the personnel action absent the protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Pridgen*, 2022 MSPB 31, ¶ 49.

¶22 The administrative judge concluded in the initial decision that the appellant's reports of patient neglect were an attempt to avoid responsibility for his own misconduct. ID at 9. However, protected whistleblowing occurs when an appellant makes a disclosure that he reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *Pridgen*, 2022 MSPB 31, ¶ 52. While motive may be relevant to the determination of a reasonable belief, a disclosure is not excluded from protection based on an appellant's motive in making it. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 20 (2015). On remand, the administrative judge should provide the parties with an opportunity to present additional evidence and argument on the appellant's whistleblower reprisal claim and make findings as to that claim under the standards discussed above.

¶23 The parties have not challenged the administrative judge's determination that the agency proved that its adverse action promoted the efficiency of the service and that the penalty of removal was within the tolerable limits of reasonableness. ID at 9-10. If the appellant does not prevail on his affirmative defense on remand, the administrative judge may incorporate into the new initial decision her original findings as to the charge, nexus, and the reasonableness of the penalty, as appropriate, taking into consideration any new testimony or other evidence that the parties introduce. *See Guzman*, 114 M.S.P.R. 566, ¶ 21.

**ORDER**

¶24     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.